

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2006

# Wiyanto v. BCIS

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3992

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wiyanto v. BCIS" (2006). *2006 Decisions.* Paper 1643.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1643

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3992
_____

HERU AGUS WIYANTO, ERTA HERO,
HERU WIJAYA and YENNY HERU

Petitioners,

v.

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,

Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA Nos. A78-496-815, A78-729-152, A78-729-200, and A95-148-788)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2006

Before: ROTH, FUENTES, and BECKER Circuit Judges.

(Filed: February 3, 2006)

_____

OPINION

_____

FUENTES, Circuit Judge:

Petitioners Erta Hero ("Hero"), Heru Wijaya ("Wijaya"), Heru Agus Wiyanto

("Wiyanto"), and Yenny Heru ("Yenny") seek review of the Board of Immigration Appeals' (the "BIA") decision affirming the Immigration Judge's (the "IJ") denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture (the "CAT").[1] In so ruling, the BIA affirmed the findings of the IJ that Hero and Yenny were statutorily ineligible for asylum because their applications were not timely filed, that Wijaya and Wiyanto did not qualify for asylum, and that none of the petitioners qualified for withholding of removal or protection under the CAT. For the reasons that follow, we deny the petition for review.

## I. Facts

The petitioners are citizens of Indonesia who are of Chinese ethnicity. Erta Hero is a Buddhist, and the remaining petitioners are Christian. The petitioners allege that they faced persecution in Indonesia based upon their ethnicity and their religions.

Lead petitioner Hero is a fifty-nine-year-old married man, and is the father of the remaining petitioners. He was the owner and operator of a business in Indonesia that used over thirty trucks in the transportation of various goods. He alleges that his trucks were hijacked regularly, and about every two months he would lose the contents of a

---

[1]"A grant of asylum allows an otherwise-removable alien to stay in the United States." Abdulai v. Ashcroft, 239 F.3d 542, 545 (3d Cir. 2001). On the other hand, withholding of removal merely confers the right not to be deported to a particular country, as opposed to the right to stay in this country. Id.

truck due to looting or burning.  He also alleges that he had difficulty obtaining a business permit and documents, and faced extortion by government officials.  He also alleges that during local soccer matches, soccer enthusiasts would come to his home and threaten to destroy his trucks unless he permitted them use of the trucks.  He alleges that he was scared to worship at his Buddhist temple at night because of the activities of criminals and extremist Muslims, but that, although many Buddhist temples were burned, his temple was never targeted and he was never harmed.  He admits that the government never interfered with his ability to worship.  Hero closed his business in December 1999 and left Indonesia the United States on January 6, 2000.  His wife remains in Indonesia with two of their children.

Wijaya is a graduate of the University of Surabaya in Industrial Engineering Management.  He testified that when he worshiped in Indonesia he faced mockery by Muslims, who would often disturb the services and throw stones at Christians.  He was never injured and, although there were church burnings in 1996, his church was not burned.  He testified that he did not attend church for several months out of fear, but he did attend fellowships in other peoples' homes.  He also testified that his father's business was often looted during the monetary crisis in Indonesia, and that at one time his father's car was burned.  In May 1998, during riots, his home was marked with a white cross, which he stated indicated that it was to be burned by rioters.  His father erased the sign, and, although their house was stoned, it was not burned.  In 1999, Wijaya was mugged while sitting in his car at a traffic light.  He alleges that he reported the incident to the

3

police, but that they did nothing.

Wiyanto is a thirty-six-year-old man with a degree in economic management from the University of Surabaya. He alleges that, while living in a neighborhood that was primarily Muslim, he faced mockery and harassment. In particular, he was pushed off his motorcycle, beaten, and robbed at knifepoint. The perpetrators of the robbery allegedly told him that, if he lost his motorcycle, he could buy another because he was "a rich Chinese child." Wiyanto alleges that he was helped to a police station, where he was given medical assistance, but that the police officers demanded money for the administration of his complaint. Although his father paid the police officers, Wiyanto never recovered his motorcycle. Wiyanto also alleges that he was afraid to leave his home for a month due to a riot on May 13, 1998. He alleges that he faced further discrimination because he was required to obtain a letter of citizenship, despite the fact that he was born in Indonesia, in order to obtain a national identification card required by the government.

Yenny is a thirty-two-year old woman. She studied economic management at the University of Widya Mandala in Indonesia, but allegedly stopped attending to college to come to the United States because of the persecution she faced as a Christian woman of Chinese descent. Yenny alleges that, in fifth grade, she was called a Chinese infidel and that in junior high school she was punished for speaking in a Chinese dialect. She also alleges that in October 1999, on her way home from church, a group of Muslims snatched her bible from her, threw it on the ground, and spat on it. They proceeded to kick her and

4

throw stones at her. A teacher from the Muslim school came to her aid, and she was able to retrieve her bible and leave without injury. In January 1998, she was called names while walking near a soccer field. Yenny also testified that in May 1998, her home was marked as a target for burning during riots because her family is Chinese. Her father removed the mark, and her house was stoned but was not burned.

On October 27, 2003, the IJ issued an oral decision denying the petitioners' applications for asylum. The IJ held that Hero and Yenny were statutorily barred from eligibility for asylum because they failed to file their applications within one year of their arrival in the United States. The IJ also held that none of the discrimination experienced by the petitioners met the legal definition of persecution under the Immigration and Nationality Act (the "INA"), and that each of the petitioners failed to establish that he or she suffered past persecution, or would suffer future persecution upon return to Indonesia, on account of his or her ethnicity or religion. The IJ therefore found that the petitioners were not eligible for asylum, withholding of removal, or protection under the CAT. The IJ granted each petitioner's application for voluntary departure. On September 21, 2004, the BIA entered individual decisions for each appeal affirming the IJ's decisions.

## II. Discussion

We review the IJ's decisions under the substantial evidence standard.[2] See Gao v.

_____

[2] Where, as here, the final order of the BIA summarily affirms or defers to the decision of the IJ, this Court "must review the IJ's decision." Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir. 2001).

5

Ashcroft, 299. F.3d 266, 272 (3d Cir. 2002). Under the substantial evidence standard, the petitioners "must show that the evidence [they] presented was so compelling that no reasonable factfinder could fail to find" that the petitioner is entitled to relief. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

### A. Asylum Claims

We have previously held that the plain language of 8 U.S.C. § 1158(a)(3) deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances. Tarrawally v. Ashcroft, 338 F.3d 180, 184-85 (3d Cir. 2003). Because the IJ held that the applications for asylum of both Hero and Yenny were not timely filed and that neither petitioner demonstrated extraordinary circumstances, we lack the jurisdiction to review their applications for asylum. We therefore turn to Wijaya's and Wiyanto's applications for asylum.

Substantial evidence supports the decision to deny Wijaya's and Wiyanto's applications for asylum. To establish refugee status, an applicant must demonstrate "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The incidents to which each petitioner testified do not meet the legal definition of persecution. Although Wijaya faced harassment and discrimination when his church services were disrupted, these incidents did not rise to the level of persecution, which include "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat

6

to life or freedom." <u>Fatin v. INS</u>, 12 F.3d 1233, 1240 (3d Cir. 1993). Similarly, the assaults and robberies that both petitioners suffered do not meet this standard. <u>See</u> <u>Lie v. Ashcroft</u>, 396 F.3d 530, 536 (3d Cir. 2005) (holding that isolated criminal acts by unknown assailants resulting in theft of personal property and minor injury were not sufficiently severe to constitute persecution). There is nothing in the record to suggest that the police officers' demand of a fee for filing a report of the theft of Wiyanto's motorcycle or failure to find the perpetrators were motivated by Wiyanto's ethnicity or religion rather than by inefficiency or corruption. Finally, Wiyanto's allegation that he must present additional documents to show his citizenship also fails to rise to the level of persecution. Therefore, substantial evidence supports the finding that neither Wijaya nor Wiyanto established past persecution.

Similarly, neither Wijaya nor Wiyanto have put forth sufficient objective evidence to support a well-founded fear that they would face persecution upon their return to Indonesia. The petitioners have failed to provide evidence of the "systemic, pervasive, or organized" persecution of Chinese or Christian Indonesians such as to constitute a "pattern or practice" of persecution sufficient to warrant asylum. <u>Lie</u>, 396 F.3d at 537. Wijaya's and Wiyanto's arguments that they would face future persecution are further undermined by the fact that their mother and two of their siblings continue to live in Indonesia and practice Buddhism and Christianity, and nothing in the record suggests that they face any persecution. <u>Lie</u>, 396 F.3d at 537 ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing

7

that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished.").

## B.  Withholding of Removal and the CAT

In order to be eligible for withholding, a petitioner must demonstrate "a clear probability" of persecution.  INS v. Stevic, 467 U.S. 407, 429 (1984).  To qualify for protection under the CAT, the petitioner must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. 1208.16(c)(2).

Wijaya and Wiyanto do not meet the standard for withholding of removal and protection under the CAT.  Because the standard for withholding of removal is more stringent than the "well-founded" fear of persecution standard required for asylum, these petitioners do not meet the standard for withholding of removal for the same reasons, explained above, that they do not merit asylum.  See Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991).  They offer no evidence that they are likely to be tortured upon their return to Indonesia in support of their petition for protection under the CAT.

Similarly, substantial evidence supports the conclusion that the allegations of Hero and Yenny do not provide bases for withholding of removal or protection under the CAT. The thefts, looting, and extortion of which Hero testified took place during an economic crisis in Indonesia, which supports the IJ's determination that they were economically motivated.  While Hero certainly faced a subjective fear that his temple would be attacked by radical Muslims, he was never attacked or injured, and he admits that the Indonesian

8

government never interfered with his ability to worship. Similarly, the incidents of harassment and discrimination that Yenny alleges simply do not rise to the level of persecution.   In sum, the incidents alleged by both Hero and Yenny do not demonstrate a clear probability that either petitioner would be persecuted or would more likely than not be tortured upon return to Indonesia.

## III. Conclusion

For all of the foregoing reasons, the IJ's decision was based upon substantial evidence.  Therefore, we will deny the petition for review.